## In re CARMICHAEL.

(District Court, D. Kentucky. February 15, 1901.)

1. BANKRUPTCY—RIGHT TO HOMESTEAD.

> An owner of a homestead in Kentucky sold it, and with the money made payments to the extent of $1,250 on other property bought, in which, on subsequently becoming a bankrupt, he claimed a homestead. At the time of the purchase he moved to such last-mentioned property, where he and his family have ever since resided. The property was conveyed to the bankrupt and his wife jointly. Ky. St. § 1702, provides that there shall be exempt to an actual bona fide housekeeper with a family a homestead not to exceed $1,000. *Held*, that the bankrupt was entitled to have a homestead of $1,000 set apart to him in the property.

2. SAME—CONTRACT OF SALE.

> The fact that the bankrupt may have entered into a contract to sell such homestead to his wife and sister-in-law. they not at the time being in any way indebted to him, did not in any way affect his right to the exemption.

E. E. McKay, for bankrupt.
J. K. Chambers, for trustee.

EVANS, District Judge. The trustee in this case having declined to set apart to the bankrupt a homestead to the value of $1,000 in a house and lot on Broadway, in this city, the bankrupt excepted, and

brought the question before the referee. He, having heard it, sustained the action of the trustee, and the bankrupt has filed a petition for a review of the ruling of the referee. Although there are some contradictory statements by the bankrupt in the testimony, the material facts seem to be that he owned a homestead in Jefferson county, outside of Louisville, which he sold, and with the money, in April, 1899, made payments to the extent of $1,250 on the purchase money for the property in which the homestead is now claimed. With his family he then moved to the property last mentioned, and has ever since, with them and with the family of his wife's mother, resided upon it, the two ladies keeping there a boarding house. The property was conveyed to the bankrupt and his wife jointly, though it is attempted to be shown that there was some arrangement between him and his wife and sister-in-law to the effect that, after the balance of the purchase money should be paid to the vendor, and after the $1,250 was repaid to the bankrupt, he would convey his interest in the real estate to them; and this arrangement, though the proof of it was somewhat shadowy, was construed by the referee to constitute in some way a mortgage to them, and upon that ground mainly the right to the homestead was denied. The original transaction was between the Fidelity Trust & Safety-Vault Company as the vendor and the bankrupt and his wife as joint vendees. He made the purchase of at least one-half interest in it. He alone made the payment of $1,250. He made it largely, and probably altogether, out of the money derived from the sale of his homestead in the country. He and his wife executed the 23 notes for the balance of the purchase money, and some of them have since been paid by her and her sister. The deed from the trust company was made to the bankrupt and his wife jointly, and he, with his family, has in fact resided upon the property as a home ever since. No agreement in writing between the bankrupt and his wife and sister-in-law seems to have been made, but the understanding proved by the evidence is one which, it seems to me, upon the facts just stated, constituted, if anything, an executory contract for the sale to them of his interest, and in no sense a mortgage; and particularly as they, in no reasonable sense, owed any debt to the bankrupt when the deed was made, which, as to him, is sought to be construed as a mortgage. The bankrupt, at most, as it seems to me, even if there had been a writing to satisfy the statute of frauds, only agreed upon certain conditions to sell his interest in the property to his wife and sister-in-law, and, as before observed, they did not then owe or create any debt to him as a basis upon which any mortgage or other security could be said to operate. He owned a half interest in the property, and agreed verbally to sell it to them upon certain conditions. If this interest was his homestead, he had the right to dispose of it regardless of his creditors, who had no interest in it, but his bankruptcy probably nullified or made impossible of execution the agreement of sale. Bankruptcy defeats most contracts of the bankrupt, but, at all events, the creditors have no interest in it, whether the wife and sister-in-law can ever enforce it or not. Section 1702 of the Kentucky Statutes is in this language:

"In addition to the personal property exempted by this article there shall, on all debts or liabilities created or incurred after the first day of June, one thousand eight hundred and sixty-six, be exempt from sale under execution, attachment or judgment, except to foreclose a mortgage given by the owner of a homestead, or for purchase money due therefor, so much land, including the dwelling house and appurtenances owned by debtors, who are actual bona fide housekeepers with a family, resident in this commonwealth, as shall not exceed in value one thousand dollars; but this exemption shall not apply to sales under execution, attachment or judgment, if the debt or liability existed prior to the purchase of the land, or of the erection of the improvements thereon."

The facts of the case seem to meet the statutory conditions upon which the homestead right of the bankrupt depends. His intent to use the city property as a homestead is demonstrated by the fact that he has always so used it since he purchased it, and the Kentucky decisions seem to require nothing more. They also seem to give him much advantage, from the fact that the purchase money was in part paid out of what he had realized from the sale of another homestead, the proceeds of which were promptly reinvested in the one now claimed. Homestead laws are liberally construed in favor of the debtor, and I see nothing in this case to lead to the conclusion that the money obtained as this was, and which was invested in another homestead, as this was, should, under the benevolent spirit of the homestead laws, be forfeited to the bankrupt's creditors, upon grounds so entirely technical as would be demanded in this case. It was expressly decided in Johnson v. Kessler, 87 Ky. 458, 9 S. W. 394, that, where a husband and wife held real estate jointly, the former was entitled to have the entire $1,000 set apart to him out of his interest. An agreement to sell the homestead cannot in any wise be held to forfeit the right to the exemption. On the contrary, many cases hold that creditors cannot attack even a voluntary or fraudulent sale of it, because, it being exempt from the payment of their debts, they have no interest in it. Tong v. Eifort, 80 Ky. 152; Dowd v. Hurley, 78 Ky. 260. And it is also clear that the proceeds of the sale of the bankrupt's country homestead were exempt when he reinvested them in the city property. Cooper v. Arnett, 95 Ky. 603, 26 S. W. 811. Subject to the conditions and exceptions set forth in the section of the statute just quoted, it seems to me that the bankrupt is entitled to the exemption he claims. The petition for the reviewing of the referee's ruling in this matter is therefore sustained, the referee's ruling is reversed and set aside, and proper orders will be entered to give effect to these views of the court.